IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | |
|---|---|
| JONATHAN KINKER,<br>    Plaintiff, | )<br>)<br>) |
| v. | )    Civil No. 3:15cv005 (JAG) |
| | ) |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br>    Defendant. | )<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

On January 11, 2012, Jonathan Lawrence Kinker ("Plaintiff") applied for Social Security Disability Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act ("Act"). The Social Security Administration ("SSA") denied Plaintiff's claims initially and upon reconsideration. On January 16, 2014, Plaintiff (represented by an attorney) appeared before an Administrative Law Judge ("ALJ") for a hearing. On February 11, 2014, the ALJ denied Plaintiff's claims in a written decision. On December 11, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.

Plaintiff now appeals the ALJ's decision pursuant to 42 U.S.C. § 405(g), arguing that new and material evidence warrants a remand, and that the ALJ erred in finding that Plaintiff could perform work requiring a reasoning level of three; in failing to incorporate Plaintiff's moderate limitations in concentration, persistence and pace in hypothetical questions posed to a vocational expert ("VE"); in finding Plaintiff's seizure disorder not severe; and, in denying controlling weight to the opinion of one of Plaintiff's treating physicians. (Pl.'s Mem. of P. & A.

in Supp. of Pl.'s Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 14) at 6–7.) This matter now comes before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross-motions for summary judgment, making the matter now ripe for review.[1] For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment or in the Alternative, Motion for Remand (ECF Nos. 12 and 13) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

## I. PROCEDURAL HISTORY

On January 24, 2012, Plaintiff applied for DIB and SSI, claiming disability due to a back and knee injury, depression, suicidal ideation, deteriorating discs, being a danger to others, internal damage to his left knee, memory loss, difficulty with comprehension of everyday tasks, being temporarily bedridden and sleep apnea, with an alleged onset date of August 11, 2011. (R. at 235.) The SSA denied Plaintiff's claims initially on March 20, 2012, and again upon reconsideration on June 29, 2012. (R. at 106-07, 176.) Plaintiff filed a written request for a hearing on August 16, 2012, and the ALJ held a hearing on January 16, 2014. (R. at 27-62, 183–85.) On February 11, 2014, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act, because Plaintiff could perform jobs existing in significant numbers in the national economy. (R. at 9–26.) On

---

[1] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments, and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

December 11, 2014, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1–4.)

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)). In considering the decision of the Commissioner based on the record as a whole, the Court must "take into account whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if substantial evidence in the record supports the findings, bind the reviewing court to affirm regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 477. If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the

Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

The Social Security Administration regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 416.920(a)(4); *see Mascio*, 780 F.3d at 634-35 (summarizing the ALJ's five step sequential evaluation). To summarize, at step one, the ALJ looks at the claimant's current work activity. 20 C.F.R. § 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. 20 C.F.R. § 416.920(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite his physical and mental limitations. 20 C.F.R. § 416.945(a). At step four, the ALJ assesses whether the claimant can perform his past work given his RFC. 20 C.F.R. § 416.920(a)(4)(iv). Finally, at step five, the ALJ determines whether the claimant can perform any work existing in the national economy. 20 C.F.R. § 416.920(a)(4)(v).

### III. THE ALJ'S DECISION

On January 16, 2014, the ALJ held a hearing during which Plaintiff (represented by counsel) and a VE testified. (R. at 29–62.) On February 11, 2014, the ALJ rendered her decision in a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 9–26.)

The ALJ followed the five-step sequential evaluation process in analyzing whether Plaintiff was disabled. (R. at 10–12.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (R. at 12.) At step two, the ALJ

found that Plaintiff suffered from the severe impairments of degenerative disc disease of the lumbar spine, osteoarthritis of the left knee, sleep apnea, obesity and major depression. (R. at 12.) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 12–15.)

The ALJ next determined that Plaintiff had the RFC to perform a range of sedentary work as defined in 20 C.F.R §§ 404.1567(a) and 416.967(a), with certain limitations. (R. at 15.) Plaintiff could only occasionally climb stairs and ramps, stoop and crouch. (R. at 15.) Plaintiff could never kneel, crawl or use ladders, ropes or scaffolds. (R. at 15). He could frequently balance and needed a cane to ambulate. (R. at 15.) Plaintiff could perform unskilled work with no contact with the general public and occasional contact with co-workers, with no tandem work assignments. (R. at 15.)

At step four, the ALJ determined that Plaintiff could not perform his past relevant work as a truck driver because of the levels of exertion required in this position. (R. at 24.) At step five, after considering Plaintiff's age, education, work experience and RFC, and consulting a VE, the ALJ found that other occupations exist in significant numbers in the national economy that Plaintiff could perform. (R. at 24–25.) Specifically, the ALJ found that Plaintiff, regardless of his limitations, could work as a document preparer. (R. at 25.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 25–26.)

On March 20, 2014, Plaintiff submitted to the Appeals Council a psychological assessment by Franklin E. Russell, Ph.D., dated February 6, 2014. (R. at 369-71, 689-94.) The

Appeals Council accepted Dr. Russell's report into the record but did not assess its credibility. (R. at 4.)

## IV. ANALYSIS

Plaintiff, forty-five years old at the time of this Report and Recommendation, previously worked as a truck driver, a picker for a textiles business and as a cook in a fast food restaurant. (R. at 284.) He applied for DIB and SSI, alleging disability from a back and knee injury, depression, suicidal ideation, deteriorating discs, creating a risk of danger to others, internal damage to his left knee, memory loss, difficulty with comprehension of everyday tasks, being temporarily bedridden and sleep apnea, with an alleged onset date of August 11, 2011. (R. at 235.)

Plaintiff presents five issues in favor of remanding the case to the agency. (Pl.'s Mem. at 6-7.) First, new evidence presented to the Appeals Council warrants remand. (Pl.'s Mem. at 6.) Second, the ALJ committed reversible error in finding that Plaintiff could perform work that required a Reasoning Level of 3. (Pl.'s Mem. at 6.) Third, the hypothetical posed to the VE failed to include all of Plaintiff's mental limitations. (Pl.'s Mem. at 6.) Fourth, the ALJ erred in finding Plaintiff's seizure disorder non-severe at step two. (Pl.'s Mem. at 6-7.) Finally, the ALJ erred by not giving controlling weight to Dr. Moore's opinion. (Pl.'s Mem. at 7.)

For the reasons set forth below, the Court finds that this case warrants remand.

**A. Dr. Russell's report constitutes new and material evidence.**

Plaintiff argues that the psychological report submitted to the Appeals Council constitutes new and material evidence not considered by the ALJ, and the Court must therefore remand the case. (Pl.'s Mem. at 7.) Defendant responds that the report does not warrant remand, because it

constitutes neither new nor material evidence. (Def.'s Br. at 18-19.) The ALJ did not have Dr. Russell's report before her, and the Appeals Council incorporated it into the record, but concluded that it did not offer a basis for review. (R. at 1-4, 9-26.)

When a claimant submits to the Appeals Council "new and material evidence relating to the period on or before the date of the ALJ decision," the Appeals Council must consider that evidence when deciding whether to grant review over an ALJ decision. *Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95 (4th Cir. 1991); 20 C.F.R. § 404.970(b). "Evidence is new if it is not duplicative or cumulative and is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Meyer v. Astrue*, 662 F.3d 700, 705 (4th Cir. 2011) (internal quotation marks omitted).

Here, on February 6, 2014, Dr. Russell completed a comprehensive psychological assessment of Plaintiff. Dr. Russell administered a Weschler Adult Intelligence Scale, Fourth Edition (WAIS-IV) test. (R. at 693.) On the test, Plaintiff achieved a full scale IQ score of 54, placing him in the Mild Mentally Retarded range of intellectual functioning. (R. at 693.) Dr. Russell found Plaintiff's pattern of scaled scores consistent with individuals who have long-term and chronic intellectual deficiencies. (R. at 693.) Furthermore, he found it likely that Plaintiff had experienced "intellectual deficits for some time." (R. at 693.)

Dr. Russell's report constitutes new evidence, because it does not consist of duplicative or cumulative evidence. No other evidence in the record establishes an IQ of 54 for Plaintiff. Furthermore, the ALJ did not have this evidence available during the hearing, because Dr. Russell had not yet examined Plaintiff.

The timing of the report does not render it stale. Defendant argues that the Court should not consider it new, because Dr. Russell produced the report five days before the ALJ's unfavorable decision, but Plaintiff did not submit it to the agency until after the decision. (Def.'s Mem. at 19.) However, Plaintiff made a motion at the hearing requesting a consultative examination to further explore his mental deficiencies. (R. at 33, 226.) The ALJ did not deny that request until she rendered her decision. (R. at 10.) Only then did Plaintiff submit his own report from a private doctor. (R. at 369.) Such a short time period between Dr. Russell's exam and the ALJ's decision does not suggest that Plaintiff deliberately withheld the report from the ALJ. And the fact that Dr. Russell examined Plaintiff five days before the ALJ's decision does not prevent it from satisfying the newness test.

Dr. Russell's report constitutes material evidence, because it could have reasonably changed the outcome. Plaintiff argues that given proper consideration, Dr. Russell's report would affirmatively establish disability under the listings of 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B, C. (Pl.'s Mem. at 7-8.) Defendant responds that the ALJ's decision could not have changed, because Plaintiff never alleged that he could not work due to intellectual disability. (Def.'s Mem. at 19.) Furthermore, Defendant contends that Plaintiff still would not meet the requirements of listing 12.05. (Def.'s Mem. at 20.)

As a threshold matter, the Court first determines that Defendant's argument that the report lacks materiality because Plaintiff never alleged intellectual disability as a disability has no merit. In applying for disability, Plaintiff listed "cannot comprehen[d] everyday tasks" as a mental condition that limited his ability to work. (R. at 283.) In doing so, he invited the agency to assess him using Listing 12.05. The ALJ's failure to address the possible disability does not

mean Plaintiff never alleged it. Therefore, the Court will proceed with an analysis of Listing 12.05.

Listings 12.05B requires a claimant to first meet the introductory paragraph threshold, by showing "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05. Pertinent to the current analysis, the claimant can meet the required level of severity in Paragraph B by showing a valid verbal, performance, or full scale IQ of 59 or less. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05B.

Here, Dr. Russell's report would establish Plaintiff's disability under Listing 12.05B. Dr. Russell states that Plaintiff may meet the criteria for Mild Mental Retardation. (R. at 693.) Even if he falls short of that criteria, "he has significant intellectual deficits." (R. at 693.) Furthermore, "it is likely that he has had intellectual deficiencies since childhood." (R. at 693.) These findings, coupled with Plaintiff's having dropped out of school in the eighth grade, provide support that Plaintiff had significant sub-average intellectual functioning that he developed before age 22, as required by the listing. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; (R. at 50.) This establishes the requirements of the introductory paragraph.

In addition to meeting the requirements of the introductory paragraph, Plaintiff meets the requirements of Paragraph B. Dr. Russell administered the WAIS-IV test, and Plaintiff achieved a full scale IQ score of 54. (R. at 693.) Therefore, if given significant weight, Dr. Russell's report would establish Plaintiff's disability under Listing 12.05 at Step Three. While this would have ended the determination process, the Court notes that giving weight to Dr. Russell's report likely would have also altered the RFC assessment.

9

Had the ALJ credited Dr. Russell's report, she could have undoubtedly formulated a more restrictive RFC. The Court understands that it should play no role in determining the proper restrictions in the RFC, but it merely recognizes that an IQ of 54 could affect such restrictions.

Furthermore, Dr. Russell made several findings with respect to Plaintiff's affective disorders that conflict with the evidence considered by the ALJ. Dr. Russell found that Plaintiff continued to have "significant depression with even some mood congruent psychosis." (R. at 693.) Dr. Russell opined that Plaintiff would have difficulty interacting with co-workers and with the public due to his underlying social anxiety. (R. at 693.) Plaintiff's depression would make it difficult for him to perform even the simplest tasks in a competitive workplace on a consistent basis. (R. at 693.) These findings could have a direct effect on the ALJ's mental RFC assessment. By altering the RFC, the report would necessarily affect the findings at steps four and five.

Plaintiff's intellectual capabilities certainly play a role in his ability to perform the duties of a document preparer—the only job that the VE testified that Plaintiff could perform. (R. at 57-58.) A document preparer requires a Reasoning Level of 3.[2] A Reasoning Level 3, in turn, has a general requirement that the worker can "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form [and] deal with problems involving several concrete variables in or from standardized situations" in addition to specific mathematical and language requirements.[3] Evidence of the claimant's IQ could potentially

---

[2] http://www.occupationalinfo.org/24/249587018.html.
[3] http://www.occupationalinfo.org/appendxc_1.html#III.

10

change the ALJ's determination of his reasoning level capabilities, thereby rendering the evidence material.

Because Dr. Russell's report, if credited, would affect the findings at steps three, four and five, in addition to the RFC assessment, a reasonable possibility exists that the report would have changed the outcome. Therefore, this Court finds that the report constitutes material evidence and recommends remand.

### B. The Court cannot determine whether substantial evidence supports the ALJ's decision.

Plaintiff argues that the new report renders a substantial evidence review impossible, because a fact-finder has not yet assessed Dr. Russell's opinion for credibility. (Pl.'s Mem. at 8-9.) Defendant rests on its argument that the report does not constitute new or material evidence, and, therefore, the Court may find that substantial evidence supports the ALJ's decision. (Def.'s Mem. at 18-20.)

In evaluating the necessity of a remand, the Court views the administrative record as a whole, including the new evidence, to determine whether substantial evidence supports the Commissioner's decision. *Wilkins*, 953 F.2d at 96; *see Meyer v. Colvin*, 754 F.3d 251, 257 (4th Cir. 2014) (considering whether new evidence "impugn[s] the integrity" of the ALJ's decision). When the new evidence does not controvert other evidence in the record, and the weight of the entire record falls heavily on one side, the new evidence does not preclude a reviewing court from conducting a substantial evidence review. *Compare Smith v. Chater*, 99 F.3d 635, 638-9 (4th Cir. 1996) (affirming an ALJ's denial of benefits after reviewing new evidence presented to the Appeals Council, because substantial evidence still supported the ALJ's findings), *with Wilkins*, 953 F.2d at 96 (reversing the ALJ's decision after determining that new evidence from a

treating physician did not conflict with other evidence in the record and substantial evidence did not support the ALJ's denial of benefits). However, when the record as a whole, including the new evidence, does not present a clearly one-sided case, the Court cannot determine whether substantial evidence does or does not support the ALJ's decision. *Meyer v. Astrue*, 662 F.3d at 707. Because no fact-finder has assessed the new evidence or reconciled it with the rest of the record, a reviewing court does not know how much probative value the evidence has. *Id.* And the reviewing court cannot assess its probative value. *Id.* ("[a]ssessing the probative value is quintessentially the role of the fact finder.") When faced with such a situation, the Court must remand the case for additional fact-finding. *Id.*

Here, on consideration of the record as a whole, the Court cannot determine whether substantial evidence supports the ALJ's denial of benefits. The ALJ never considered or addressed Listing 12.05 and how the evidence relates to it. (R. at 12.) More generally, in assessing Plaintiff's mental RFC, the ALJ never considered evidence relating to Plaintiff's intellectual functioning. (R. at 15-20.) Instead, Plaintiff's mental RFC results from the ALJ's consideration of evidence pertaining to Plaintiff's affective disorders. (R. at 15-20.) That evidence cited by the ALJ conflicts with some of Dr. Russell's findings. (R. at 15-20, 691-93.) The ALJ never assigned weight to Dr. Russell's report or reconciled it with other related evidence. This precludes the Court from determining whether substantial evidence supports the ALJ's decision.

Because the Court cannot conduct a meaningful review of the ALJ's decision, the Court recommends remand for further fact-finding.

### C. The Court cannot determine whether substantial evidence supports the ALJ's hypothetical to the VE.

In addition to arguing that new evidence requires remand here, Plaintiff assigns further errors to the ALJ's decision. The Court's inability to conduct a substantial evidence review likewise precludes it from analyzing two of those errors, both relating to the hypothetical posed to the VE.

Plaintiff argues that the ALJ erred in finding that Plaintiff can perform work at a Reasoning Level of 3. (Pl.'s Mem. at 10.) Defendant responds that Defendant's past work as a truck driver demonstrates his ability to perform work that requires a Reasoning Level of 3. (Def.'s Mem. at 21-22.) Without knowing the credibility of Dr. Russell's report, this Court cannot determine whether substantial evidence supports the ALJ's decision that Plaintiff can perform work at a Reasoning Level of 3.

Plaintiff next argues that the ALJ did not convey all of Plaintiff's mental limitations in the hypothetical posed to the VE, warranting remand under *Mascio*. (Pl.'s Mem. at 12.) Defendant responds that the hypothetical accurately accounted for all of Plaintiff's work-related mental limitations. (Def.'s Mem at 22.) As discussed above, the Court cannot determine whether substantial evidence supports the ALJ's mental RFC assessment.

### D. The ALJ did not err in discounting Plaintiff's seizure disorder.

Plaintiff next assigns error to the ALJ in that she discounted Plaintiff's seizure disorder in finding it non-severe. (Pl.'s Mem. at 12-13.) Defendant responds that substantial evidence supports the ALJ's determination that Plaintiff's seizure order did not qualify as severe. (Def.'s Mem. at 25.)

At the second step of the sequential analysis, the claimant must prove that he has a "severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(c), 404.1520(c). The regulations require that the ALJ find the claimant not disabled at step two if he "do[es] not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant's impairment "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

Under the Act, a severe impairment that entitles one to benefits must cause more than a minimal effect on one's ability to function. 20 C.F.R. § 404.1520(c). Likewise, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [Plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a). "When medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work" the impairment is not severe. SSR 85-28.

Here, the ALJ acknowledged the Plaintiff's diagnosis of a seizure disorder. (R. at 12.) However, the ALJ did not consider the seizure disorder severe, because the record did not indicate that the seizure disorder would have more than a minimal effect on Plaintiff's functional capabilities for the durational requirement. (R. at 12.) Substantial evidence supports the ALJ's conclusion.

14

Plaintiff's medical records support the ALJ's labeling of Plaintiff's seizure disorder as non-severe. On August 19, 2011, Earle Moore, M.D., diagnosed Plaintiff with acute to moderate seizure disorder, though all examinations yielded normal results. (R. at 518-19.) However, Dr. Moore did not perform any specific seizure examinations. (R. at 519.) On August 16, 2013, Dr. Moore again diagnosed Plaintiff with chronic seizure disorder, but based that diagnosis only on Plaintiff's and his wife's reports of a fainting episode three days earlier. (R. at 635-36.)

On December 17, 2013, Plaintiff went to Halifax Regional Hospital following a seizure at his lawyer's office. (R. at 603.) James McCubbin, M.D., noted that Plaintiff's primary medical doctor had conducted no testing to confirm the previous seizure diagnosis. (R. at 603.) Dr. McCubbin also noted that Plaintiff had not had an EEG done that showed seizures. (R. at 604.) Dr. McCubbin opined that untreated sleep apnea could explain all of Plaintiff's symptoms. (R. at 604.) Further, an EEG scan performed on December 1, 2011, and a CT scan performed on December 17, 2013, yielded no results indicating a seizure disorder. (R. at 457, 613.)

Plaintiff's testimony supports the ALJ's decision. Plaintiff testified that he could control his episodes by taking anti-seizure medication without any side effects, as evidenced by the infrequency of seizure episodes. Plaintiff experienced seizures on August 13, 2011, and again on August 13, 2013. (R. at 518, 635.) This two-year time period and Plaintiff's ability to control the seizures through medication suggest that Plaintiff's seizure disorder would not affect his "physical or mental ability to do basic work activities" for a continuous period of at least twelve months. 20 C.F.R. §§ 416.1520(c), 416.1521(a). Consequently, substantial evidence supports the ALJ's determination that Plaintiff's seizure disorder did not qualify as severe.

### E. The ALJ did not err in declining to give Dr. Moore's medical source statement controlling weight.

Plaintiff argues that the ALJ committed error by declining to give controlling weight to Dr. Moore's opinion. (Pl.'s Mem. at 14-17.) Defendant responds that substantial evidence supports the ALJ's evaluation of Dr. Moore's assessment. (Def.'s Mem at 27-28.)

Under the applicable regulations and case law, a treating source's opinion deserves controlling weight if it enjoys support from medically acceptable clinical and laboratory diagnostic techniques and does not conflict with other substantial evidence in the record. *Craig*, 76 F.3d at 590; 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); SSR 96-2p. Further, the regulations do not require that the ALJ accept opinions from a treating source in every situation, *e.g.*, when the source opines on the ultimate issue of disability for purposes of employment (an issue reserved for the Commissioner), or when the treating source's opinion conflicts with other evidence or when it otherwise lacks support. 20 C.F.R. §§ 404.1527(c)(3)-(4), (d), 416.927(c)(3)-(4), (d).

The ALJ must consider the following when evaluating a treating source's opinion: (1) the length of the treating source relationship and frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability based upon the medical record; (4) consistency between the opinion and the medical record; (5) any specialization on the part of the treating source; and, (6) any other relevant factors. 20 C.F.R. §§ 404.1527(c), 416.927(c). However, those same regulations specifically vest the ALJ — not the treating source — with the authority to determine a claimant's disability as that term is defined under the Act. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1).

16

Courts generally should not disturb an ALJ's decision as to the weight afforded a medical opinion absent some indication that the ALJ "dredged up specious inconsistences." *Dunn v Colvin*, 607 F. App'x. 264, 267 (4th Cir. 2015) (citing *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992)). Indeed, an ALJ's decision regarding the weight afforded to a medical opinion should remain untouched unless the ALJ failed to give a sufficient reason for the weight afforded. *Dunn*, 607 F. App'x at 267 (citing 20 C.F.R. § 404.1527(d)).

In this case, the ALJ declined to give controlling weight to Dr. Moore's opinion, because his opinion conflicted with other evidence in the record, including his own treatment notes. (R. at 22-23.) The ALJ noted that Dr. Moore relied quite heavily on Plaintiff's subjective reported symptoms and impairments. (R. at 23.) The ALJ also noted that Plaintiff's physical examinations and mental evaluations routinely yielded normal and unremarkable results, "thus calling into question Dr. Moore's opined limitations." (R. at 23.) Still, the ALJ gave some weight to Dr. Moore, factoring his opinion into the conclusion that Plaintiff could only perform sedentary work with additional nonexertional limitations. (R. at 23.) Substantial evidence supports the ALJ's decision to afford less than controlling weight to Dr. Moore's opinion.

On December 19, 2013, Dr. Moore completed a residual functional capacity medical source statement. (R. at 627-30.) Dr. Moore diagnosed Plaintiff with severe trauma to his left leg, morbid obesity, uncontrolled diabetes, uncontrolled seizure disorder, chronic pain and degenerative arthritis with a "guarded" prognosis. (R. at 627.) In Dr. Moore's opinion, Plaintiff could lift, but never carry, some weight. (R. at 627-28.) Specifically, he could occasionally lift ten pounds, rarely lift fifteen pounds, but never twenty pounds. (R. at 627.) Plaintiff could not walk one city block without experiencing severe pain or needing rest, could not walk a city block

on rough or uneven terrain or climb steps without the use of a handrail. (R. at 628.) According to the statement, Plaintiff had problems with balance while ambulating, as well as with stooping, crouching and bending. (R. at 628.) Dr. Moore indicated that Plaintiff could only sit for less than an hour during a typical day, and that Plaintiff would need to take unscheduled breaks which would require him to be away from his work area. (R. at 628.) Dr. Moore ultimately concluded that Plaintiff could not work. (R. at 630.)

Dr. Moore's own treating records support the ALJ's decision not to give the above opinion controlling weight. On numerous occasions, Plaintiff did not report any physical ailments when visiting Dr. Moore for check-ups and other evaluations. (R. at 565-66, 569-70, 586-87, 593-600, 631-34, 642-43.) The ALJ explained that these inconsistencies detracted from his credibility. (R. at 23.)

State agency physicians' opinions also support the ALJ's decision. David C. Williams, M.D., opined that Plaintiff could lift twenty pounds occasionally and ten pounds frequently. (R. at 114.) Dr. Williams opined that Plaintiff could climb stairs occasionally. (R. at 114.) Plaintiff could sit for six hours during an eight-hour day. (R. at 115.) Finally, Dr. Williams indicated that Plaintiff "should be capable of a wide range of light work." (R. at 115.) Another state physician, Dr. Oritt, also concluded that Plaintiff could perform simple and repetitive work. (R. at 117.) These opinions conflict with Dr. Moore's opinion, providing a basis for the ALJ not to assign Dr. Moore's opinion controlling weight.

Because Dr. Moore's opinion conflicted with other evidence in the record, it did not automatically deserve controlling weight. The ALJ sufficiently explained his reasoning for not

giving the opinion controlling weight. Substantial evidence supports that decision, and the Court will not disturb that decision.

## V. CONCLUSION

Based on the foregoing analysis, the Court recommends that Plaintiff's Motion for Summary Judgment or in the Alternative, Motion for Remand (ECF No. 12 and 13) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 15) be DENIED and that the final decision of the Commissioner be VACATED and REMANDED.

Let the clerk forward a copy of this Report and Recommendation to United States District Judge John A. Gibney, Jr. and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a <u>de novo</u> review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

                                                      /s/
                                         David J. Novak
                                         United States Magistrate Judge

Richmond, Virginia
Date: <u>January 11, 2016</u>